# FOR PUBLICATION





**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re | Case No. RS 07-11180 MJ |
| Brenda Kaye Wilkins, | Chapter 7 |
| Debtor(s). | MEMORANDUM OF DECISION RE DENIAL OF THE UNITED STATES TRUSTEE'S MOTION TO DISMISS CHAPTER 7 CASE PURSUANT TO 11 U.S.C. §707(b)(2) |
| | DATE: May 29, 2007<br>TIME: 3:30 p.m.<br>CTRM: 302 |

This cause comes before the court after hearing on the United States Trustee's Motion to Dismiss Case Pursuant to 11 U.S.C.§707(b)(2). It turns on the question whether the debtor may include in her "means test" calculation payments due on her secured property obligations, notwithstanding the fact that she intends to surrender the property subject to the security interest and will not be making payments on the secured debt postpetition. After analysis of the statutory language as applied to the facts of this case, this court joins the majority of bankruptcy court decisions addressing this issue and finds the debtor is entitled to deduct these secured payments in her means test calculations. As a result of this deduction, the debtor passes the means test of §707(b)(2). The

1

United States Trustee's motion to dismiss is denied.

## FACTUAL BACKGROUND

The pertinent facts at issue are not disputed. Debtor Brenda K. Wilkins filed her voluntary chapter 7 bankruptcy on March 8, 2007. Debtor's Schedule A - Real Property reflected her interest in the subject real property located at 110 Victoria Stn Blvd., Lawrenceville, GA (the "property"). Debtor's schedule D - Creditors Holding Secured Claims reflected the secured claim of Ameriquest Mortgage against the property based on a note dated June, 2004, secured by a recorded deed of trust. Debtor's filed statement of intentions stated that the Georgia property would be surrendered. Debtor's undisputed evidence filed in response to the motion to dismiss showed that the monthly payment on the secured debt to Ameriquest Mortgage was $1,749.74 in April, 2007, rising to $1,994.07 on May 1, 2007. The note has a duration of 30 years, due and payable in 2034.

Debtor filed her form B22A --Chapter 7 Statement of Income and Means Test Calculation -- with her petition. The form B22A showed that her annualized current monthly income ("CMI"), as defined by §§ 101(10A) and 707(b)(2) of the Bankruptcy Code, is $72,440.00. The applicable state median family income for her family size of one individual is $43,107.00. As a consequence, her CMI exceeds the applicable median family income, creating the necessity that the means test calculation be performed.

In part V, subpart C (Deductions for Debt Payment) debtor included as part of the deductions allowed under §707(b)(2) an $1,800.00 per month payment to Ameriquest Mortgage, notwithstanding her statement of intent to surrender the real property in Georgia. With this deduction included, the total of all deductions exceeded the debtor's CMI and the presumption of abuse under §707(b)(2) did not arise.

The U.S. Trustee's motion asserts that because she is surrendering the Georgia property, debtor is not entitled to the $1,800.00 deduction on the Georgia property. Reducing her allowed deductions by this sum results in a positive monthly disposable income of approximately $1,578.00. As a result,

2

the debtor would fail the means test using the U.S. Trustee's calculation.

## DISCUSSION

As described above, the outcome of this motion turns on whether the debtor is entitled to deduct the monthly payment on secured debt for property she intends to surrender.

Under §707(b)(1), the court, after notice and a hearing, may dismiss a chapter 7 case or, with the debtor's consent, convert it to chapter 13 if the court finds that granting relief under chapter 7 would be an abuse of the provisions of chapter 7. The criteria for finding abuse are set forth in §707(b)(2), which provides:

> "(2)(A)(i): In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000.00, whichever is greater; or (II) $10,000.00."

This presumption can be rebutted by a demonstrations of "special circumstances", such as a serious medical condition or active duty military service, which justify additional expenses or adjustments to current monthly income. §707(b)(2)(B).

For purposes of this test, the debtor's CMI is "the average monthly income from all sources that the debtor receives . . . without regard to whether such income is taxable income, derived during the 6 month period ending on (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by §521(a)(1)(B)(ii)." §101(10A). Section707(b) permits the debtor to subtract from CMI certain expenses. The applicable expenses are generally established by the IRS National Standards and Local Standards from the area in which the debtor resides, but, in some categories, the debtor is permitted to deduct actual expenses. §707(b)(2)(A)(ii). Debtors are to use the expenses in effect as of the

3

petition date. §707(b)(2)(A)(ii)(I). Additionally, debtors are permitted to deduct average monthly payments for secured and priority debts. §707(b)(2)(A)(iii). This subsection contains the language subject to interpretation:

> "(2)(A)(iii): The debtor's average monthly payments on account of secured debts shall be calculated as the sum of –
>
> (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition;. . ."

The interpretation of these words of the statute has led to the differing bankruptcy court decisions cited by the U.S. Trustee, on the one hand, and the debtor, on the other. The Trustee relies heavily on In re Skaggs, 349 B.R. 595 (Bankr E.D.Mo 2006), which concludes that the debtor is not entitled to deduct a payment on a secured debt on property he or she intends to surrender. The Skaggs decision focuses on the language "scheduled as contractually due," concluding that the bankruptcy code was not referring to the common dictionary meaning for the word "schedule" but whether a debt was identified on a debtor's bankruptcy schedules. Using this definition of schedules, the Skaggs court opines that if a debtor's schedules and statements show that the debtor will not be making the payment on a secured debt in each of the 60 months following the date of the petition, this secured payment may not be appropriately deducted on the means test. Skaggs, Id.  The court concludes:

> "To focus on the single term "contractually due" without due consideration of the import of the term "scheduled" and the phrase "in each of the 60 months following the date of the petition" will miss the actual meaning and the intent of §707(b)(2). A primary intent of Congress in the passage of BAPCPA was to ensure that those debtors who can pay their debts do so. In In re Hardacre, 338 B.R.718, 725 (Bankr.N.D.Tex. 2006), the court underlined this Congressional purpose as set out in 151 Cong. Rec. 2459 at 2469-70 (March 10, 2005)" Id. at 600.

In contrast, the debtor relies on In re Walker, 2006 WL 1314125 (Bankr.N.D.Ga. 2006) and

4

several cases which follow <u>Walker's</u> reasoning. Because the statute does not define scheduled, Walker looks to Webster's dictionary to define the word as "to plan for a certain date." The court then analyzes "as contractually due" under the common meaning that the debtor is legally obligated under the contract (i.e. promissory note) to make a payment in a certain amount, with a certain amount of interest, for a set number of months into the future. "Accordingly, payments that are 'scheduled as contractually due' are those payments that the debtor was required to make on certain dates in the future under the contract. These payments are limited by additional statutory language to only those payments required in each of the 60 months after the petition is filed. For example, the debtor may have a car loan with a remaining payment term of only 2 years, or mortgage with a remaining payment term of 20 years. The debtor would include only the remaining 24 months of the car loan payments, but would add all 60 months of the mortgage payments in order to calculate the average monthly payment on secured debts." <u>Walker</u>, Id. at 1314125.

The reasoning in <u>Walker</u> has been followed in a number of bankruptcy court cases, including <u>In re Kogler</u>, 2007 WL 1376370 (Bankr. W.D.Wis.), <u>In re Mundy</u>, 2007 WL 620971 (Bankr.N.D.Pa), <u>In re Galyon</u>, 2007 WL 883394 (Bankr.W.D.Okla.) And <u>In re Haar</u>, 360 B.R. 759 (N.D. Ohio 2007). Although each judge's analysis varies in the details, all conclude that the term "scheduled as contractually due" may include payments which will not be made post petition on surrendered property. The analyses of these cases is persuasive to this court.

Since the persuasive cases are non-binding, this court feels constrained to offer its similar but independent analysis of the relevant statute. The court's starting point in construing a statue is "the existing statutory text." <u>Lamie v. United States Trustee</u>, 540 U.S. 526, 534, 124 S.Ct. 1023, 1037(2004). "It is well established that when the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd– is to enforce it according to its terms." Id. "As long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." <u>In re American Steel Product, Inc.</u>, 197

F.3d 1354, 1356 (11th Cir. 1999). In United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, the Supreme Court held that the plain meaning of a statute is controlling unless "the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." Id. at 242. A statute is not ambiguous, however, merely because it is susceptible to varying interpretations. "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used and the broader context of the statute as a whole." Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997).

This court finds that the words "scheduled as contractually due" have a plain meaning which does not lead to an absurd result. I reach that result whether "scheduled" is given the dictionary meaning "to plan for a certain date" or was intended to reflect debts listed in the "Schedules" filed with the court by the debtor. The court's understanding of "contractually due" makes the differing definitions of "scheduled" insignificant. Here, on the petition date, the debtor was under contract (i.e., bound by a promissory note she had executed) to make regular monthly payments to Ameriquest until 2034. These payments were "contractually due" from the debtor on the petition date. The debtor properly listed the subject property in schedule A and properly scheduled the secured debt in schedule D. The fact that she stated an intention to surrender the Georgia property in her statement of intention did not change her legal obligation to make the payments as it existed on the petition date. The debt was neither discharged nor forgiven on that date. The payments were contractually due when the petition was filed.

Does this simple interpretation of the statutory language lead to an absurd result? This court thinks not. The Skaggs case and the U.S. Trustee argue the policy behind the §707(b)(2) means test; i.e. ensure that those debtors who can pay their debts do so. Skaggs, at 600. Making this argument in the context of this subsection, however, presumes that the means test as a whole presents an accurate picture of the debtor's income and expenses. It does not. It is a mechanical test that requires the debtor to assume as expenses certain IRS standards, rather than using the actual expenses of the debtor

6

in these categories. Congress could not have meant the means test to present an accurate, realistic picture of a debtor's income and expenses or it would have chosen a different vehicle to conduct the test. If the language which formulates the means test must be strictly followed in doing the form B22A calculations in all other regards, than the language of §707(b)(2)(A)(iii) should be similarly strictly followed.

## CONCLUSION

The Debtor was under contract to make the payments to Ameriquest on the petition date. She is entitled to deduct any such payments that are scheduled as contractually due and she has done so. This calculation leads to the conclusion that she has passed the means test. The United States Trustee's motion to dismiss must be denied.

This memorandum of decision shall serve as this court's findings of fact and conclusions of law as provided by Federal Rule of Bankruptcy Procedure 7052. A separate order shall issue from the court.

Dated: July 3, 2007

_____
MEREDITH A. JURY
United States Bankruptcy Judge

7

NOTICE OF ENTRY OF JUDGEMENT OR ORDER

AND CERTIFICATE OF MAILING

TO ALL PARTIES IN INTEREST LISTED BELOW:

1.  You are hereby notified that a judgement or order entitled:

**MEMORANDUM OF DECISION RE DENIAL OF THE UNITED STATES TRUSTEE'S MOTION TO DISMISS CHAPTER 7 CASE PURSUANT TO 11 U.S.C. §707(b)(2)**

was entered on _____JUL 3 2007_____.

2.  I hereby certify that I mailed a true copy of the order or judgement to the persons and entities listed below on _____JUL 3 2007_____.

Dated: JUL 3 2007

_____, Deputy Clerk

Office of the U.S. Trustee
3685 Main Street Ste 300
Riverside, CA 92501

**Brenda Kaye Wilkins**
1005 N Center Ave Apt 10202
Ontario, CA 91764-5588

**Leon D Bayer**
Bayer Wishman & Leotta Attorney at Law
888 S Figueroa St Ste 1970
Los Angeles, CA 90017-5468

**Sandra L Bendon**
3943 Irvine Blvd., #329
Irvine, CA 92602

1
2  **Elizabeth A. Lossing**
3  **United States Trustee (RS)**
   3685 Main Street, Suite 300
4  Riverside, CA 92501
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27